**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRIAN S. BRETZING** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:25cv305-HSO-BWR** |
| | § | |
| | § | |
| **HARRISON COUNTY PUBLIC** | § | |
| **LIBRARY SYSTEM, et al.** | § | **DEFENDANTS** |

**<u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS [9], [22]</u>**

Defendants Harrison County Public Library System, Sarah Crisler-Ruskey, Kelly Derouen, and the Harrison County Library Public Board of Directors ("collectively, "Defendants") seek dismissal of pro se Plaintiff Brian S. Bretzing's ("Plaintiff" or "Bretzing") 42 U.S.C. § 1983 claims against them under Federal Rule of Civil Procedure 12(b)(6).   *See* Mot. [9]; Mot. [22].   Defendants' Motions [9], [22] should be granted, and the claims against them should be dismissed.

## I.   <u>BACKGROUND</u>

### A.   <u>Factual Background</u>

As Plaintiff tells it, this is an explosive case involving epiphanies, toilet paper, and "haughty" librarians.   According to the Complaint [1] and its attachments, the Harrison County, Mississippi, Public Library System (the "Library") has committed violations of unspecified constitutional rights of Plaintiff for the last 7.5 years, with tensions reaching a boiling point in August 2025.   *See* Compl. [1-1] at 2-8.   As detailed in a letter to the Library and attached to the Complaint [1], this led to Plaintiff experiencing an "epiphany" on the meaning of

1

respect in July 2025.  *Id.* at 2.  Shortly thereafter, he needed to access the computers at the Library for personal business.  *See id.*  Upon arrival, Plaintiff saw one of the librarians, Defendant Kelly Derouen ("Derouen"), and "wondered what her thoughts would be on [his] epiphany[.]  So [he] bent down on [her] desk, and asked her, '[h]ow do you know if someone disrespects you?'"  *Id.*  Derouen engaged in the conversation briefly until she pointed out that Plaintiff was being disrespectful by being too loud in the Library.  *See id.* at 2-3.

On Saturday, August 9, 2025, Plaintiff was en route to the Library to tend to his business when he was overcome by a more pressing matter.  *See id.* at 3. Plaintiff avers that he had been "prescribed Mounjaro to treat diabetes, and to help [with his] sleep apnea."  *Id.*  But "[o]ne of the side affects [sic] [of the drug] is diarrhea," and apparently "the diarrhea kicked in as [Plaintiff] pulled into the West Biloxi Library parking lot."  *Id.*  He rushed to the Library's bathroom and was fortunate enough to make it in time, but there was no toilet paper.  *See id.*  This was allegedly the third time Plaintiff had urgently needed to use the Library's bathroom just to discover that there was no toilet paper.  *See id.*  Thankfully, Plaintiff was able to tidy himself up with paper towels stocked in the bathroom and proceeded back into the main wing of the Library.  *See id.*

According to Plaintiff:

> As I walked into the library, I saw Mrs. Derouen at her desk, and I instinctively knew she would be haughty and disrespectfully.  So to prepare her, I stated, "Do you remember our discussion about respect?" Her immediate response was, "Don't start with me today!"  . . . .  I had to exemplify to explained that: "There was no toilet paper in the men's room."  She got belligerent towards the homeless, ranting about how, "There was toilet paper in there yesterday," inferring that someone stole

2

it . . . .    Just unprofessional behavior and darn right disrespectful.

. . . [I]t dawned on me how disrespectful and haughty she has always been, and I told her, "For 7 years now, you have been disrespectful, and haughty towards people.    You and other women have wrote disciplinary reports that have restricted me from the Harrison County Libraries, and I'm tired of it."    This is when she told me to leave and not come back until Monday.

*Id.* at 3-4 (all errors in original).

Plaintiff did not comply with Derouen's request, and he was ultimately escorted off the premises by police, *id.* at 4; he was also ordered not to return to the Library until Monday (it is closed on Sundays), *see id.*; Mem. [10] at 10; Mem. [23] at 9.    On August 13, 2025, the Director of Harrison County Library Systems, Defendant Sarah Crisler-Ruskey ("Crisler-Ruskey") sent Plaintiff a letter notifying him that he was prohibited from entering all Harrison County libraries for thirty days due to the incident on August 9.    *See* Compl. [1-1] at 1.    The letter also informed him that he could appeal the suspension at the next Harrison County Library Public Board of Directors[1] ("the Board") meeting the following week.    *See id.* at 1.    And on August 26, 2025, the Board upheld his suspension.    *See id.* at 9.

B.    Procedural History

Proceeding pro se, on October 14, 2025, Plaintiff brought 42 U.S.C. § 1983 claims against Defendants for violations of his First and Fifth Amendment rights, as incorporated through the Fourteenth Amendment, and for sex discrimination.

---

[1] Mississippi statute indicates that the board of a public library is comprised of trustees, not directors.    *See* Miss. Code Ann. § 39-3-15(1)(a); *id.* § 39-3-17(1).    A letter from the Library attached to the Complaint [1] also reflects this.    *See* Compl. [1-1] at 9.    For purposes of this Order, the Court refers to directors and trustees synonymously.

3

*See* Compl. [1] at 3-4.   As the Court understands it, Plaintiff's claims are twofold: first, he was denied access to a public facility without due process of law in violation of the First and Fourteenth Amendments; and second, he was discriminated against based on sex because every time he has been disciplined by the Library it has been by female librarians, again in violation of the Fourteenth Amendment.   *See id.* at 4; Compl. [1-1] at 3-5.

On January 29, 2026, Defendants Crisler-Ruskey, Derouen, and Harrison County Public Library System filed a Motion [9] to Dismiss, arguing insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), failure to state a plausible claim for relief under Rule 12(b)(6), and that Derouen and Crisler-Ruskey are entitled to qualified immunity.   *See* Mot. [9]; Mem. [10]; Reply [15].   Plaintiff filed three responses to the Motion [9].   *See* Resp. [13], [14], & [19].   The first two [13], [14] were filed on the same day, within the page limit, and did not deprive Defendants of the ability to submit the final argument on the matter.   *See* L.U. Civ. R. 7(b); *Brown v. Wiggins*, No. 3:18-CV-487-HTW-LRA, 2019 WL 3723628, at *1 (S.D. Miss. Aug. 7, 2019).   And although untimely, Defendants did not ask to strike the Responses [13], [14].   Given the liberal pleading standard afforded pro se litigants, *see, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), the Court construes these two Responses [13], [14] as one response in accordance with the Local Rules, *see* L.U. Civ. R. 7(b).   However, the Court did grant Defendants' Motion [20] to Strike Plaintiff's third Response [19] as an unauthorized surrebuttal. *See* Mot. [20]; Text Only Order entered July 15, 2026.

On May 4, 2026, Defendant Harrison County Library Public Board of

4

Directors filed its own Motion [22] to Dismiss, raising the same arguments as the other Defendants.  *See* Mot. [22]; Mem. [23].   The only difference is that the Board also argues it is not an entity amendable to suit under Mississippi law.   *See* Mem. [23] at 13-15.   To date, Plaintiff has not responded to this Motion [22] and the time for doing so has long passed.   Finally, on May 8, 2026, all Defendants withdrew their claims for insufficient service of process under Rule 12(b)(5), *see* Mot. [26]; Mem. [27]; Text Only Order entered July 15, 2026, leaving only their arguments under Rule 12(b)(6) and for qualified immunity.[2]

## II.   DISCUSSION

A.     Relevant Legal Authority

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff."   *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016) (per curiam) (quotations omitted). The allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]"   *Twombly*, 550 U.S. at 555.   In other words, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

---

[2] At times, both parties attach exhibits such as police call logs and unanswered discovery requests to their briefings.   *See* Resp. [13-1] at 1-2; Mot. [9-1] at 1-4; Mot. [22-1] at 1-4.   The Court cannot consider these documents at the Rule 12(b)(6) stage.   *See, e.g., Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) ("For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments.").   Nonetheless, the Court has reviewed all exhibits and determined that none would alter the result here.

to prevent a motion to dismiss." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted).

Pro se plaintiffs are held "to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam); *see also Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam) ("Even a liberally construed *pro se* civil rights complaint, however, must set forth facts giving rise to a claim on which relief may be granted.").

B.    Claims Barred by the Statute of Limitations

Plaintiff claims that his thirty-day suspension was the fourth or fifth restriction imposed on him by the Library in the last 7.5 years. *See* Compl. [1-1] at 5. As a preliminary matter, Defendants argue Plaintiff's vague references to restrictions issued upwards of seven years ago are barred by the statute of limitations. *See* Mem. [10] at 5-6; Mem. [23] at 5.

"Because Congress has not specified a limitations period for section 1983 suits, . . . federal courts borrow the forum state's general personal injury limitations period." *Cuvillier v. Taylor*, 503 F.3d 397, 402 (5th Cir. 2007) (quotation omitted). This means that in Mississippi, a plaintiff has "three years from the day the cause of action accrues" to bring suit under 42 U.S.C. § 1983. *Id.* (citing Miss. Code Ann. § 15-1-49; *James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990)). As such, the Court will not consider any alleged constitutional violations that occurred more than three years before October 14, 2025 – the date the Complaint [1] was filed. *See id.*; *Jones*

6

*v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."). Based on the allegations in the Complain [1] and its attachment, this leaves only the incidents in July through September 2025. *See generally* Compl. [1-1].

C.     Remaining Procedural Due Process Claims

Plaintiff asserts that Defendants violated his due process rights by removing and suspending him from the Library for thirty days. *See* Compl. [1] at 4; *see generally* Compl. [1-1]. The Fourteenth Amendment to the United States Constitution holds that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. It provides "a guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). For a § 1983 claim based upon an alleged procedural due process violation, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* (emphasis in original). "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon*, 494 U.S. at 125).

1.     Liberty Interest in Access to the Public Library

For Plaintiff to succeed on his due process claims, he must possess a liberty

7

interest in access to a public library.  *See id.*    Several circuits recognize that "[t]he First Amendment protects the right to receive information, including the right to some level of access to a public library."    *In re Watkins*, No. 23-10359, 2023 WL 5664171, at *2 (11th Cir. Sept. 1, 2023) (per curiam) (quotation omitted); *see also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992) ("Our review of the Supreme Court's decisions confirms that the First Amendment . . . encompasses the positive right of public access to information and ideas. . . .    [T]his right . . . includes the right to some level of access to a public library[.]"); *Neinast v. Bd. of Trs. of Columbus Metro. Libr.*, 346 F.3d 585, 591 (6th Cir. 2003) ("This right to receive information includes the right to some level of access to a public library, the quintessential locus of the receipt of information." (quotation omitted)); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1119-20 n.6 (10th Cir. 2012) (collecting cases and finding that "the district court did not err in concluding that the First Amendment affords a right to receive information, and that Doe sufficiently alleged a violation of this right" when he was banned from entering the public library).

The United States Court of Appeals for Fifth Circuit has not spoken directly on the matter, but it has distinguished the holdings in *Kreimer* and *Neinast* from a book removal case before it.    *See Little v. Llano Cnty.*, 138 F.4th 834, 845 (5th Cir.) ("[T]hose cases addressed whether a library could evict someone from its *premises*, not whether someone could demand the library put certain books on its *shelves*." (emphasis in original)), *cert. denied sub nom. Little v. Llano Cnty., Texas*, 146 S. Ct. 886, 223 L. Ed. 2d 274 (2025).    The court noted in dicta that the *Kreimer* line of

"cases teach that people have some right to receive information from others without government interference."   *Id.*

Based on this precedent, the Court will assume that Plaintiff had a First Amendment right to access the Library,[3]  *see, e.g.*, *Kreimer*, 958 F.2d at 1255, and First Amendment rights generally manifest as liberty interests for due process purposes, *see, e.g., Reed v. Bryant*, 719 F. App'x 771, 777 (10th Cir. 2017).   But that is not the end of the inquiry.   *See Goertz*, 598 U.S. at 236.

2.    Process of Removal from the Public Library

"[O]nce it is determined that the Due Process Clause applies, the question remains what process is due."   *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quotation omitted).   "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."   *Id.* at 542 (quotation omitted). Usually, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."   *Zinermon*, 494 U.S. at 127 (emphasis in original). But this principle is not absolute, and "[t]here are, of course, some situations in which a post[-]deprivation hearing will satisfy due process requirements." *Loudermill*, 470 U.S. at 542 n.7.   For instance, "'[w]here the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures . . . are sufficiently reliable to minimize the risk of erroneous

---

[3] To the extent Plaintiff is arguing that he has a particular right to access toilet paper once in the public library, the Court has found no authority recognizing such a guarantee.   If anything, the opposite is true, as Plaintiff's right to access the public library is rooted in informational access, *see, e.g., Kreimer*, 958 F.2d at 1255, which has no connection to the use of public bathrooms.

determination,' a prior hearing may not be required." *Zinermon*, 494 U.S. at 127 (alterations in original) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978)).

Indeed, procedural due process "is a flexible concept that varies with the particular situation." *Id.* at 27. And when evaluating whether a particular process comports with due process requirements, a court must consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail[.]

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Walsh v. Hodge*, 975 F.3d 475, 482 (5th Cir. 2020) (same).

a.     Plaintiff's Removal on August 9, 2025

First, Defendants maintain that Plaintiff's initial removal from the Library did not implicate a cognizable liberty interest worthy of due process protection because "[a] less than one day suspension does not give rise to a protected liberty interest . . . ." Mem. [10] at 13 (citing *Grigsby v. City of Oakland*, No. C 01-0010 MMC, 2002 WL 1298759, at *3 (N.D. Cal. June 10, 2002) ("[P]laintiff was unable to access the Library . . . [for] at most, several hours. This de minimis interruption of plaintiff's otherwise unrestricted access to the Library simply does not implicate a cognizable liberty interest.")); *see also, e.g., Goss v. Lopez*, 419 U.S. 565, 576 (1975) (holding that due process protections attach "as long as a property deprivation is not de minimis"); *Carter v. W. Rsrv. Psychiatric Habilitation Ctr.*, 767 F.2d 270, 272

n.1 (6th Cir. 1985) (per curiam) ("[A]lthough we recognize that a two-day suspension without pay constitutes a property deprivation in theory, not every such deprivation is significant enough to trigger the protections of the due process clause.   Under the facts of the instant case, [the plaintiff]'s suspension was in the manner of routine discipline.   We regard his deprivation as *de minimus* [sic] and not deserving of due process consideration." (citations omitted)); *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 at n.7 (8th Cir. 2006) (noting that prisoner's deprivation of freedoms, such as "access to the canteen and outside vendors and computer privileges," were de minimis and did not amount to a constitutionally protected liberty interest").

But there is also authority holding that the violation of a First Amendment right is generally not predicated on the duration of an alleged deprivation, *cf. Elrod v. Burns*, 427 U.S. 347, 374 (1976) (holding, in the preliminary injunction context, that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"), and Plaintiff has pled that removal from the Library would interrupt his business schedule, *see* Compl. [1-1] at 4. Viewing the facts in the light most favorable to Plaintiff, the Court will assume, without deciding, that his removal on August 9 triggered a liberty interest subject to due process protections.

That being said, the same cases that support Plaintiff's right to access a public library also support a library's right to remove a patron who is "disrupt[ing] the quiet and peaceful library environment."   *In re Watkins*, 2023 WL 5664171, at *2 (quotation omitted).   For example, in *In re Watkins*, the plaintiff "was ordered to leave the library and suspended for thirty days only after repeatedly using anti-gay

11

slurs."  *Id.*  The court found that "the library reasonably could view cursing or offensive language as disruptive to the quiet and peaceful library environment." *Id.* (quotation omitted).   And the court in *Kreimer* recognized that a library could remove a person whose "odor was often so offensive that it prevented the [l]ibrary patrons from using certain areas of the [l]ibrary . . . ."   958 F.2d at 1247, 1262-68; *see also Little*, 138 F.4th at 845.

Here, according to Plaintiff's own allegations, he was confrontational and argumentative towards Library staff, and he had recently been told by the staff that his tone was too loud for the setting.   *See* Compl. [1-1] at 3-4.   It was reasonable for Library staff to view his behavior on August 9 "as disruptive to the quiet and peaceful library environment," *In re Watkins*, 2023 WL 5664171, at *2 (quotation omitted), and to ask him to leave and not return until the next business day.   This is not inconsistent with the guarantees of the Fourteenth Amendment: Plaintiff was on notice that his behavior was disruptive and would not be tolerated, *see* Compl. [1-1] at 3; and given the nature of events, a pre-removal hearing would have been "unduly burdensome in proportion to" the one-day suspension Plaintiff initially received, *Zinermon*, 494 U.S. at 132; *cf. Goss*, 419 U.S. at 582 (noting in the classroom setting that "there are recurring situations in which prior notice and hearing cannot be insisted upon;" for instance, a student who poses "an ongoing threat of disrupting the academic process may be immediately removed from school").

b.    Plaintiff's Thirty-Day Suspension

Turning to Plaintiff's subsequent thirty-day suspension, and "[a]pplying the

factors set forth in *Mathews v. Eldridge*, the Court begins its analysis by first

describing the procedural protections afforded to [him]."   *920 S. Beach Blvd., LLC*

*v. City of Bay Saint Louis*, No. 1:21-CV-263-TBM-RPM, 2023 WL 2749170, at *15

(S.D. Miss. Mar. 31, 2023) (citing *Mathews*, 424 U.S. at 335).

Within three business days of Plaintiff's initial removal, he was sent a letter

from the Harrison County Library System informing him that he was "restricted

from Harrison County Library branches for 30 days, pending board review, as our

policy requires."   Compl. [1-1] at 1.   The letter explained that the ban was a result

of the "incident on August 9 wherein [Plaintiff] refused to comply with staff's

request that [he] leave the library[.]"   *Id.*   It also informed him that he could

appeal the decision at the next board meeting, scheduled for the following week, but

if he planned to do so he must let them know.   *Id.*   It is unclear whether Plaintiff

attended the meeting, but he did send two letters to the Board prior to the meeting:

one styled as a formal grievance against Defendant Derouen and one labelled

"Restriction Appeal."   *See* Compl. [1-1] at 2-8.[4]   The day after the meeting, the

Board notified Plaintiff that his thirty-day ban had been upheld and that he could

---

[4] Plaintiff did not plead in the Complaint [1] that he attended the Board meeting and properly appealed his suspension, and the parties appear to dispute whether or not he did.   *Compare* Mem. [10] at 13 (Defendants claiming "that Bretzing had a right of appeal for the suspension.   He apparently passed on that opportunity to appeal"), *with* Resp. [14] at 3 (Plaintiff stating that he "presented the Constitutional rights violations" and "made it known that . . . [he] was amicable [sic] to a settlement" at the Board's meeting).   Such a failure to correctly utilize the Library's appellate process would serve as another reason to dismiss the Complaint [1].   *See Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998) ("[A plaintiff] cannot argue that [their] due process rights were violated when [they] skipped an available state remedy.").   It is a plaintiff's obligation to plead facts in their complaint plausibly stating a claim for relief, *see Iqbal*, 556 U.S. at 678, which Bretzing has not done.   Even so, in viewing and liberally construing all facts in his favor, the Court proceeds under the assumption that Plaintiff properly appealed his suspension before seeking relief here.

return to the Library on September 7, 2025.   *See* Compl. [1-1] at 9.

Weighing the *Mathews* factors, the Court cannot say that Plaintiff was deprived of the minimum procedural guarantees to which he was entitled.   *See* 424 U.S. at 335.   Plaintiff was notified of his ban shortly after the events giving rise to it occurred, and he was afforded an opportunity to appeal the decision.   *See generally* Compl. [1-1].   Although Plaintiff has a right to access the Library, the Library also has a right to protect its quiet environment.   *See, e.g.*, *In re Watkins*, 2023 WL 5664171, at *2.   The procedures it used in suspending Plaintiff adequately safeguarded those interests while creating little likelihood for erroneous deprivation.   *See Mathews*, 424 U.S. at 335.

Although Plaintiff did not receive a pre-deprivation hearing, "[t]he necessity of quick action by the State or the impracticality of providing any pre[-]deprivation process may mean that a post[-]deprivation remedy is constitutionally adequate." *Zinermon*, 494 U.S. at 128 (quotations omitted).   Plaintiff was disrupting the quiet nature of the Library and not heeding staff instructions.   *See generally* Compl. [1-1].   Given Plaintiff's history, it was reasonable to suspend him before he was able to return to the Library and continue his disruptive behavior.   And based on the facts here, the post-deprivation remedy Plaintiff received was sufficient.   *See Zinermon*, 494 U.S. at 128; Compl. [1-1] at 1, 9.

In sum, Plaintiff has not plausibly stated a procedural due process claim for either his removal from the Library on August 9 or for his subsequent suspension, and these claims should be dismissed.   *See 920 S. Beach Blvd., LLC*, 2023 WL 2749170, at *16 (dismissing at the Rule 12(b)(6) stage a procedural due process

14

claim where the plaintiff was not "deprived of the minimum procedural constitutional guarantees to which it was entitled").

D.    Sex Discrimination Claim

Plaintiff's other claim is for sex discrimination.    *See* Compl. [1] at 4.    He believes that he was targeted for different treatment on the basis of sex because "all the restrictions [against him] where implemented by women[.]"    Compl. [1-1] at 5; *see also* Compl. [1] at 4 (stating "[i]t has been all females who have caused these incidents to happen").

It is well established that "[i]ntentional discrimination on the basis of gender by state actors violates the Equal Protection Clause" of the Fourteenth Amendment, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31 (1994), and "that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim," *Doe v. Silsbee Indep. Sch. Dist.*, 402 F. App'x 852, 855 (5th Cir. 2010) (per curiam) (quotation omitted).    Although the state bears the burden of overcoming the heightened scrutiny that applies to sex-based equal protection claims, *see, e.g.*, *United States v. Skrmetti*, 605 U.S. 495, 510 (2025), at the Rule 12(b)(6) stage, the burden still rests on the plaintiff to plead facts plausibly stating such a claim, *see Iqbal*, 556 U.S. at 678.

Here, Plaintiff's amorphous sex discrimination claim fails at a basic level. He has not identified any Library policy that subjects men to different treatment, nor has he plausibly alleged discriminatory intent behind such a classification.    His theory can be equated simply to: he is a man; all disciplinary actions against him were initiated by women; *ergo,* there has been sex discrimination.    *See* Compl. [1-1]

15

at 3-5.   This sort of baseless pleading warrants dismissal.   *See Iqbal*, 556 U.S. at 678; *see also Ryburn v. Giddings Indep. Sch. Dist.*, No. 1:16-CV-879-RP, 2017 WL 3821691, at \*5 (W.D. Tex. Aug. 31, 2017) (dismissing under Rule 12(b)(6) an equal protection claim where the "[p]laintiff offer[ed] no facts to plausibly show that the [d]istrict treated boys differently for a discriminatory purpose . . .").

E.      Other Claims for Constitutional Violations

Plaintiff's only remaining allegations are that of "haughtiness" by Defendant Derouen, *see* Compl. [1-1] at 3-4, 7, and the fact that Defendant Crisler-Ruskey sent two letters to Plaintiff regarding his suspension, *see id.* at 1, 9.   But "verbal abuse," let alone mere haughtiness and disrespect, "do[es] not present actionable claims under § 1983."   *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).   And the Court has located no authority establishing that a librarian sending letters to a patron pursuant to library policy gives rise to a constitutional violation, especially where the letters were important in ensuring that the patron received proper notice and an opportunity to challenge his suspension.   *See* discussion *supra* Section II.C.2.b.   Again, Plaintiff has failed to establish any plausible claim for relief.

## III.   CONCLUSION

Having thoroughly considered Plaintiff's claims, Defendants' Motions [9], [22] to Dismiss should be granted.[5]   To the extent the Court has not addressed any of

---

[5] And because Plaintiff has failed to plausibly allege any constitutional violations, the Court need not address the merits of Defendants Derouen and Crisler-Ruskey's qualified immunity arguments. *See, e.g., Evans v. Oktibbeha Cnty.*, No. 1:13-CV-00233-GHD, 2014 WL 4467361, at \*1 n.1 (N.D. Miss. Sept. 10, 2014) ("Because the Court finds that all claims must be dismissed for failure to state a claim under Rule 12(b)(6), the Court need not address the qualified immunity issue.").   Likewise, the Court need not consider whether a board of trustees for a public library is amendable to suit under Mississippi law.

the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants Harrison County Public Library System, Sarah Crisler-Ruskey, Kelly Derouen, and the Harrison County Library Public Board of Director's Motions [9], [22] to Dismiss are **GRANTED**, and Plaintiff Brian S. Bretzing's claims against them are **DISMISSED WITH PREJUDICE**.   The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 15th day of July, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE